**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADEL Y. AL GHANEM,<br><br>    Plaintiff,<br><br>    v.<br><br>INTREPID ACQUISITION HOLDINGS, LLC;<br>BLACK DIAMOND CAPITAL MANAGEMENT,<br>LLC; BLACK DIAMOND COMMERCIAL<br>FINANCE, LLC; BDCM OPPORTUNITY FUND III,<br>LP; BDCM OPPORTUNITY FUND IV, LP; BLACK<br>DIAMOND CREDIT STRATEGIES MASTER<br>FUND, LTD; IAP WORLDWIDE SERVICES, INC.;<br>and IAP GLOBAL SERVICES, LLC,<br><br>    Defendants. | Case No:   23-cv-10187<br><br>**FILED UNDER SEAL** |

## COMPLAINT FOR INJUNCTIVE RELIEF AND JURY DEMAND

Plaintiff Adel Y. Al Ghanem ("**Al Ghanem**"), a Kuwaiti businessman and judgment creditor of nominal defendant IAP Worldwide Services, Inc. ( "**IAP**"), through his undersigned counsel, brings this action under the Florida Uniform Fraudulent Transfer Act to avoid the Private Sale Fraudulent Transfer and the Insider Preferences and to enjoin further fraudulent transfers including the November 28, 2023 Sale (as each initial capitalized term is defined below) as follows:

## INTRODUCTION

1. Al Ghanem is a judgment creditor owed more than $114 million dollars by IAP, a Florida-based contractor of logistical and technical support services. After years of litigation, Kuwait's highest court held that IAP breached a joint venture agreement with Al Ghanem, awarding Al Ghanem damages in 2017 (the "**Kuwait Judgment**"). Al Ghanem then brought proceedings to domesticate the Kuwait Judgment in Florida state court. Despite IAP's continued attempts to avoid liability for years, in September 2023 the Florida court issued an interim order ("**Interim Recognition Order**"), stating that the Kuwait Judgment "shall be recognized" upon issuance of a still pending final recognition order.

2. IAP has been balance sheet insolvent since at least ▮▮▮▮ if not earlier. In response to the Interim Recognition Order and IAP's insolvency and lack of reasonable capital to sustain operations, in September 2023 IAP began a process to sell itself, or substantially all of its assets, in order to generate sale proceeds sufficient to pay in full existing secured debt and provide a meaningful recovery to unsecured creditors, including Al Ghanem. IAP received at least two indicative bids to purchase the IAP enterprise.

3. But IAP's majority stockholder, Black Diamond Capital Management and its affiliates (collectively, "**Black Diamond**"), which was also IAP's largest secured creditor and administrative agent ▮▮▮▮▮▮▮▮▮▮▮ (defined below), had other ideas. Black Diamond

did not want to lose control of IAP, so it highjacked IAP's sale process. Black Diamond proceeded with a highly misleading and deeply flawed "private sale" of IAP under the Uniform Commercial Code on October 24, 2023 (the "**Private Sale**"). IAP's restructuring advisors, minority shareholders, minority secured lenders, and Al Ghanem all vehemently objected to this improper gambit. And even when a bidder appeared at the farcical "private sale," willing to purchase IAP's business for far more than the ▮▮▮▮▮▮▮ in secured debt, which Al Ghanem was to support by granting a release, on information and belief Black Diamond rejected this proposal, changed the auction rules, and proceeded to have its newly formed affiliate, Intrepid Acquisition Holdings, L.L.C. ("**Intrepid**"), acquire stock in valuable subsidiaries of IAP for no more than ▮▮▮▮▮▮ a fraction of its value.

4.      Black Diamond, as controlling shareholder and controlling secured lender who designed the "private sale" and made sure that IAP would not block it, orchestrated a fraudulent transfer of certain of IAP's valuable assets (the "**Private Sale Fraudulent Transfer**"), to the clear detriment of IAP creditor Al Ghanem. And to make matters even worse, Black Diamond has completely refused to provide basic information about the Private Sale Fraudulent Transfer—on information and belief, even after receiving continuing interest from a bidder who would be prepared to pay an amount sufficient to satisfy in full all secured claims and provide for a recovery to Al Ghanem of well over ▮▮▮▮▮▮ IAP's chief restructuring officer resigned in protest following Black Diamond's egregious misconduct.

5.      Black Diamond must have realized how badly it botched the Private Sale because on November 17, 2023, buried in the advertising pages of the *Wall Street Journal*, Black Diamond advertised a purported *public* sale of substantially all of IAP's assets. But again, with the goal of retaining control of IAP, Black Diamond scheduled the sale to occur in New York City on

November 28, 2023—just eleven days after publication notice on a Friday before the Thanksgiving holiday. In other words, Black Diamond is giving the entire world only four business days (November 17, 20, 21, and 22) to learn about IAP, sign nondisclosure agreements, conduct due diligence, and bid at the November 28 auction. This is manifestly commercially unreasonable.

6.      But these are not the only problematic transfers. Two months earlier, on August 31, 2023, Black Diamond ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

At the time, Black Diamond was fully aware that IAP was insolvent. These transfers are obvious insider preferences (the "**Insider Preferences**").

7.      Al Ghanem seeks to avoid the Private Sale Fraudulent Transfer and the Insider Preferences, enjoin any further fraudulent transfers and have this Court order that Black Diamond pay to Al Ghanem the amounts that Al Ghanem would have received following the robust marketing process that Black Diamond knowingly interfered with.

## THE PARTIES

8.      Plaintiff Adel Y. Al Ghanem is a Kuwaiti businessman, domiciled in Kuwait. He has been a judgment creditor of IAP Worldwide Services, Inc. since 2017.

9.      Defendant Black Diamond Capital Management, LLC ("**Black Diamond Capital**") is an asset management firm incorporated in Delaware with its principal place of business in Connecticut. It indirectly owns more than 50% of the voting stock of IAP and has appointed a majority of the directors of the IAP Board of Directors.

10.     Defendant Black Diamond Commercial Finance, LLC ("**Black Diamond Finance**") is a wholly owned subsidiary of Black Diamond Capital. It is incorporated in Delaware

with its principal place of business in Connecticut.  At all relevant times Black Diamond Finance has been an administrative agent and collateral agent under ███████████████

11.     Defendants BDCM Opportunity Fund III LP, BDCM Opportunity Fund IV, LP, and Black Diamond Credit Strategies Master Fund, Ltd (collectively, the "**Black Diamond-held Funds**") are funds wholly owned or controlled by Black Diamond Capital or its affiliates.  BDCM Opportunity Fund III LP is incorporated in Delaware with its principal place of business in Connecticut.  BDCM Opportunity Fund IV, LP is incorporated in Delaware with its principal place of business in Connecticut.  Black Diamond Credit Strategies Master Fund, Ltd is incorporated in the Cayman Islands with its principal place of business in Connecticut.  At all relevant times, the Black Diamond-held Funds have been ███████████████████

12.     Intrepid Acquisition Holdings, LLC is an affiliate of Black Diamond, incorporated in Delaware on or about October 19, 2023.  On information and belief, Intrepid's principal place of business is Connecticut.  Intrepid is a special purpose-vehicle, owned or controlled (directly or indirectly) by Black Diamond.  On information and belief, Intrepid acquired the assets of IAP in connection with the Private Sale.

13.     IAP Worldwide Services, Inc. is a provider of logistical and technical support services incorporated in Florida with its principal place of business in Cape Canaveral, Florida.

14.     IAP Global Services Inc. is IAP's parent company incorporated in Florida with its principal place of business in Cape Canaveral, Florida.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1332(a)(2).

16.     This is a civil action between a citizen of a foreign state on one side, and citizens of different states and a foreign state on the other.

17.     The amount in controversy exceeds the $75,000 statutory minimum.

18.     This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1409 (b)(2) because a substantial part of the events giving rise to this claim occurred in this District.  Specifically, Black Diamond and Intrepid participated in the Private Sale and Black Diamond has scheduled the November 28 Sale (defined below), both of which have taken place or will take place in New York City, at Black Diamond's behest.

## FACTS SUPPORTING COMPLAINT

### A.     IAP and The Kuwait Litigation That Gave Rise To Al Ghanem's Judgment

19.     IAP is a global provider of logistical and technical support services headquartered in Cape Canaveral, Florida.  The overwhelming majority of IAP's business involves providing services to the United States military or contractors of the military.  IAP routinely bids on government contracts.  Because IAP provides services to the United States military, its senior executives require security clearances.

20.     In 2003, IAP sought to provide logistical support to United States military operations in connection with Operation Iraqi Freedom, including in Kuwait.

21.     IAP understood that, as a United States company, it was required to work with a local business to operate in Kuwait.  As a result, in 2003 IAP entered into a joint venture contract with Al Ghanem, a Kuwaiti businessman with whom IAP had previously worked.  IAP subsequently breached its obligations under the joint venture.

22.     In 2006, Al Ghanem sued IAP in the Kuwait Court of First Instance for breach of the joint venture contract.  On March 22, 2017, after over a decade of litigation, Al Ghanem obtained a judgment from the Kuwait Court of Appeal, which held that IAP had breached the joint

venture agreement and awarded Al Ghanem damages equal to USD $78,779,449 plus interest. That judgment is final and non-appealable.

### B.    The Florida Recognition Proceeding

23.    In January 2018, Al Ghanem commenced a special statutory proceeding in the 18th Judicial Circuit in Florida to have the Kuwait Judgment recognized as a Florida state court judgment. *See Al Ghanem v. IAP Worldwide Servs. Inc.*, No. 05-2018-CA-012905 (Fla. 18th Cir. Ct.). Al Ghanem requested damages equal to USD $78,779,449 plus prejudgment interest of 7% beginning March 22, 2017, as well as post-judgment interest.

24.    What should have been a routine recognition proceeding has been dragged on at IAP's insistence. For more than six years, IAP has used every tool at its disposal to delay the performance of its obligations to Al Ghanem. As Florida Judge Naberhaus of the 18th Judicial Circuit has recognized, "IAP has asserted every possible objection under the Florida Uniform Out-of-Country Foreign Money-Judgment Recognition Act".

25.    On September 18, 2023, the 18th Judicial Circuit entered the Interim Recognition Order, indicating that "IAP has not met its burden under the Act to prevent the Kuwaiti judgment from being recognized by this Court" and the Kuwait Judgment "shall be recognized" in a forthcoming order, which is still pending as of the date of this filing. The Kuwait Judgment and accrued interest represents a current liability in excess of $114 million for IAP.

### C.    The Relationship Between Black Diamond and IAP|

26.    Black Diamond Capital is "a privately held alternative asset management firm specializing in high yield credit, stressed and distressed credit, restructurings and business turnarounds."[1]

---

[1]   Black Diamond Capital Management, www.bdcm.com.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████ Black Diamond is IAP's majority secured lender,

administrative agent, and collateral agent. ███████████████████████████

███████████████████████████████████████████

███████

28.     Sometime on or after 2014, Black Diamond also became IAP's majority

shareholder and has exerted control over IAP since, including by appointing a majority of the

members of IAP's Board of Directors

29.     Under Black Diamond's control, IAP's financial situation has taken a turn for the

worse and, by no later than ████ IAP became insolvent.

30.     ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

32. 

33. ▮▮▮▮▮▮▮▮▮▮▮▮ Black Diamond took advantage of its insider status as IAP's majority shareholder and majority secured creditor. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ even though it was fully aware that IAP was insolvent and that the transaction would deplete IAP's estate to the detriment of its stakeholders and creditors. ▮▮▮▮▮▮▮▮▮▮▮▮

34. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### D. The Florida Court Indicates It Will Recognize the Kuwait Judgment and IAP Pivots to a Sale

35. In September 2023, faced with the imminent recognition by the Florida court of the long-standing Kuwait Judgment and its obvious insolvency, IAP decided to sell itself or all or substantially all of its operating assets as a way out of its financial conundrum.

36. IAP engaged M3 Advisory Partners, LP ("**M3**") to guide IAP through the sale process. M3's Managing Director Martin Young was engaged to serve as Chief Restructuring Officer and Chief Operating Officer, and M3 employee Ryan Rowan also was engaged to serve as Deputy Chief Restructuring Officer and Chief of Staff.

37. M3 worked with Amanda Brownfield, IAP's Chief Executive Officer, to identify ▮▮▮ companies that qualified to serve the needs of IAP's government contractors. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████

█████████

    █████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

39.    █████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

40.    IAP's officers and counsel sought out Al Ghanem's cooperation in and endorsement of this sale process, primarily because no bidder was likely to acquire IAP as a going concern absent consent from Al Ghanem—IAP's largest creditor.

41.    Al Ghanem's position throughout the sale process was to fully cooperate with IAP. Indeed, at IAP's request, Al Ghanem reviewed, commented on, and expressed a willingness to affirmatively release both its Kuwait Judgment and potential claims and causes of action against each potential buyer, as long as the parties reached an agreement on the amount of money to be paid to Al Ghanem.

    ███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

43.    Consistent with his desire to see IAP sold in a value-maximizing process, and at the request of IAP, on October 5, 2023 IAP and Al Ghanem submitted an emergency joint motion

with the Florida court to request that it defer issuing a final recognition order for 30 days "to allow the parties an opportunity to discuss a potential consensual resolution of this matter[.]"

44.    At that point, counsel for IAP had represented to Al Ghanem that its intention was to negotiate in good faith, in an effort to settle Al Ghanem's claims out of court. A consensual deal would involve the sale of IAP as a going concern. As Al Ghanem discovered thereafter, Black Diamond's interference prevented this good faith negotiation from ever bearing fruit.

**E.    Black Diamond Interferes with IAP's Sale Process and Pursues a Sham UCC Article 9 Private Sale**

45.    At some point before October 19, 2023 Black Diamond decided to torpedo IAP's consensual sale process and chose instead to initiate a "private" foreclosure of IAP's assets pursuant to Section 9-610 of the New York Uniform Commercial Code (the "**Private Sale**"). Black Diamond made this decision despite its knowledge that there already was a robust consensual sale process that generated multiple bidders who had provided indicative bids well in excess of the secured claim.

46.    On information and belief, IAP's officers and restructuring counsel, including CEO Amanda Brownfield, vehemently disagreed with this strategy, protesting that the Private Sale would destroy the company's value. Other minority security holders also opposed IAP's Private Sale.

47.    Black Diamond, however, decided to move forward with its scheme, over objections. This disagreement eventually culminated in the IAP's Chief Restructuring Officer's departure from the Company.

48.    To conduct the marketing of IAP's assets, Black Diamond engaged Candlewood Partners ("**Candlewood**") as an investment banker. Candlewood was not experienced in marketing assets of companies that require national security clearance. Indeed, Candlewood

11

reached out to Al Ghanem's counsel to encourage Al Ghanem to bid. Al Ghanem, as a foreign national, could not acquire IAP's assets—a fact apparently unknown to Candlewood.

49.     Candlewood created a one-page teaser for the Private Sale, which it called "Project Runway." The teaser document stated that Candlewood, on behalf of a single secured lender, "is seeking parties to participate in a private foreclosure sale of substantially all assets of Project Runway (the 'Company'), a government defense contractor known for providing services in aviation operations, critical mission support, logistics management and communications solutions." The same teaser represented that the "secured seller" would sell substantially all assets of the company to one selected buyer by no later than October 24, 2023.

50.     On October 20, 2023 Black Diamond notified Al Ghanem of the Private Sale through Candlewood's one-page teaser. In a letter that same day, Black Diamond requested Al Ghanem agree to provide a release to whomever was the winning bidder at the Private Sale. The letter claimed, without merit or explanation, that an expeditious Private Sale was necessary to maximize IAP's value. Black Diamond further stated that it "desire[d] to have a robust UCC Sale process with multiple potential buyers" and "invited" Al Ghanem to purchase the IAP's assets for cash through the Private Sale.

51.     The same day counsel for Al Ghanem wrote to Black Diamond's counsel, objecting to conducting the Private Sale over the sale process that IAP had already put in place, and demanding assurances that Black Diamond would not credit bid for the assets of IAP. Further, the letter made clear that Al Ghanem's counsel had been informed that Black Diamond, as majority stockholder, would not consent to a sale of substantially all of IAP's assets unless 50% of any sale proceeds of secured debt was shared between unsecured creditors and IAP's stockholders, even though IAP was hopelessly insolvent. The letter further advised Black Diamond that if it

proceeded with the Private Sale, Plaintiff would "hold Black Diamond and those who aided and abetted it responsible."

52.     The next day, counsel for Black Diamond responded.  Black Diamond repeated its false assertion that the Private Sale would render a competitive bidding process, alleging that IAP's consensual sale process did not benefit Black Diamond because the indicative bids allegedly were highly contingent, and stating that it "ha[d] no arrangement to credit bid at the UCC Sale."

53.     The representation that Black Diamond would not credit bid for IAP's assets was false.  Unbeknownst to Al Ghanem, on October 19, 2023, Black Diamond formed Intrepid—a Delaware limited liability company.  The individual who signed the certification of formation was or is an assistant general counsel of Black Diamond.  As discussed below, Intrepid acquired valuable assets of IAP at the Private Sale five days after its formation.

54.     The only reasonable inference is that Black Diamond formed Intrepid for the express purpose of acquiring IAP's assets, using funds provided by Black Diamond that would be repaid to Black Diamond.  In effect, Black Diamond would be credit bidding for IAP's assets.

55.     In the days leading up to the Private Sale, Al Ghanem's counsel reached out to Black Diamond's counsel several times to reach an amicable solution, yet every attempt was either rejected or ignored.

56.     The day before the Private Sale, Black Diamond's counsel contacted Al Ghanem's counsel and indicated that Black Diamond (as a lender) was willing to buy Al Ghanem's claim for $5 million.  Al Ghanem rejected that offer (since one prospective bidder had already offered to pay Al Ghanem substantially more) but Al Ghanem made a counter-proposal that night.  Black Diamond never replied.

57.     Also the day before the Private Sale, Al Ghanem's counsel relayed to Black Diamond's counsel that he planned to attend the auction "to observe."  Black Diamond replied the later that day, stating that "[t]here will not be a room with an open auction, as this is a private sale transaction not a public auction.  Individual general creditors will not have a role or be permitted to attend."  This statement was made even though Black Diamond and its investment banker had expressly requested Al Ghanem agree to provide a release to any winning bidder, in addition to inviting Al Ghanem to bid for IAP's assets in full knowledge that, as a Kuwait national, could not own those assets.

58.     On October 24, 2023, minutes before the "sale" took place, Black Diamond's counsel told Al Ghanem's counsel that there were no exigent circumstances and that Al Ghanem should assume there was not going to be a sale that day.  Yet, the sham Private Sale of IAP's assets apparently took place that day, and the details of what exactly happened continue to be unknown to Al Ghanem, despite multiple efforts to learn the truth.

59.     On information and belief, there was one legitimate bidder at the Private Sale. ▮▮▮▮ the lead bidder with whom Al Ghanem had been negotiating in good faith, appeared and was prepared to make a bid indicating it was willing to acquire IAP and its subsidiaries as a going concern, agreeing to pay all secured debt in full, leaving money left over for unsecured creditors such as Al Ghanem, and preserving jobs.  Black Diamond, however, apparently turned the bid away for undisclosed reasons and without any support.

60.     On information and belief, even though the teaser indicated that substantially all of IAP's assets would be sold to a single buyer during or immediately prior to the Private Sale, Black Diamond changed the auction rules by breaking IAP's assets up into three lots.  Black Diamond

did this knowing that the two existing bidders for IAP's business were interested in acquiring IAP as a going concern and not broken up into separate lots.

61.     On information and belief, Black Diamond instead acquired certain of IAP's assets through Intrepid (a vehicle created by or at the direction of Black Diamond only days before the Private Sale) for a mere ███████ a sum substantially below market value and the value of other bids IAP received in a going concern sale.  Black Diamond did so in full knowledge that, as a secured lender, it could not directly purchase the collateral itself in a private sale under the Uniform Commercial Code.

62.     On information and belief, the list of IAP assets that Black Diamond could have acquired likely includes the following IAP wholly owned subsidiaries: (1) G3 Systems, Ltd.; (2) JPATS Logistics Services, LLC; (3) IAP World Services, Inc.; (4) IAP-EC, LLC; (5) Pensacola Bay Support Services, LLC; (6) Readiness Management Support, L.C; (7) Readiness Management Support, LLC (Qatar).  Al Ghanem does not know precisely which subsidiaries were acquired because Black Diamond has refused to disclose what transpired at the Private Sale.

63.     On information and belief, there are minutes and/or a transcript of the Private Sale. These minutes (or transcript) have not been shared with Al Ghanem.

64.     IAP's Chief Restructuring Officer Martin Young resigned after the Private Sale.

**F.     Radio Silence Following the Private Sale**

65.     In the days and weeks following Black Diamond's fatally flawed Private Sale, Al Ghanem's counsel made repeated attempts to get clarification from any of the relevant parties as to IAP's status and the events of October 24, 2023.  Al Ghanem has been either ignored or met with non-answers at every turn.

66.     For example, on October 26, 2023, counsel for Al Ghanem emailed counsel for Black Diamond asking for explanations about what happened at the Private Sale, how Black

Diamond intended to proceed, and whether it believed it owned IAP.  Black Diamond did not respond.  Al Ghanem's counsel then sent a follow-up email on October 28.  Still, to this day, there has been no response.

67.     On November 2, 2023, counsel for Al Ghanem sent a letter to counsel for IAP and Black Diamond (copying counsel for IAP's other secured lenders) with a series of questions concerning the Private Sale.  Among them were the following: "(1) What bids were made at the October 23 [sic] 'sale,' what was accepted, what assets (including stock) were sold, and have any of the purported sales closed?; (2) Does Black Diamond take the position that its secured debt remains owed by IAP?; (3) Who were the 'Required Lenders' who instructed Black Diamond, as agent, to conduct a sale of collateral?; (4) What information was shared with potential bidders who were invited to attend the October 23 [sic] sale?; (5) How many creditors does IAP currently have, including Mr. Al Ghanem, unpaid professionals, employees, and taxing authorities?; (6) Did IAP's Board make any decisions to support or oppose Black Diamond's attempted sale on October 23 [sic]? Were any stockholder consents solicited?; (7) ██████████████████████████ ███████████████████████████████████████ (8) Does IAP intend to file for bankruptcy before 90 days ████████████████████████████████ and (9) Have litigation hold notices been put in place by IAP and Black Diamond?"

68.     Counsel for Black Diamond replied on November 6 in a letter comprising less than a single page.  There, counsel for Black Diamond disputed that Al Ghanem was a judgment creditor, despite the existence of the Kuwait Judgment since 2017 and the Interim Recognition Order.  Black Diamond also disputed that bidders were turned away at the Private Sale and stated that IAP's prospective buyers made "highly contingent" offers.  Otherwise, the November 6 letter did not answer a single question that Al Ghanem posed.

69.     Counsel for Black Diamond (at Winston & Strawn, purportedly representing the Black Diamond-held Funds as lenders) also represented that he had been in the same room as a different lawyer for Black Diamond (at Skadden, purportedly representing Black Diamond Capital as majority stockholder) when Al Ghanem's counsel contacted the Skadden attorney minutes before the Private Sale. No Black Diamond attorney disclosed this fact during that phone call, but if true, it confirms that Black Diamond knowingly treated its lending interests and its stockholder interests as one and the same.

70.     Counsel for Al Ghanem responded accordingly via email, requesting that Black Diamond explain what precisely was inaccurate in the letter Al Ghanem sent on November 2. There has been no response to date.

71.     On information and belief, even after the Private Sale, both ████████ have expressed continuing interest to acquire IAP as a going concern and would pay cash far in excess of the secured debt, but Black Diamond has refused to consider these indications of interest seriously.

72.     On November 8, Counsel for Al Ghanem requested the Florida court to issue its final recognition order, as it had become apparent that IAP, at the direction and control of Black Diamond, was not acting in good faith.

### G.     Black Diamond Has Scheduled an Intentionally Flawed Public Sale Auction in New York City

73.     On November 17, 2023, buried in the advertising pages of the *Wall Street Journal*, Black Diamond advertised a public sale of substantially all of IAP's assets on November 28 (the "**November 28 Sale**"). On information and belief, Black Diamond is proceeding with the November 28 Sale because it has realized its Private Sale was deeply flawed.

74.    But again with the goal of retaining control of IAP, Black Diamond scheduled the sale to occur in New York City on November 28, 2023—just eleven days after publication notice on a Friday before the Thanksgiving holiday.

75.    Black Diamond is giving the entire world only four business days (November 17, 20, 21, and 22) to learn about IAP, sign nondisclosure agreements, conduct due diligence, and bid at the November 28 auction, assuming that any potential bidders are reviewing the *Wall Street Journal* as opposed to more targeted industry publications.  This is commercially unreasonable.

76.    Plaintiff believes that Black Diamond intends to credit bid its portion of loans its holders against IAP, and/or have its controlled vehicle Intrepid bid, in order to acquire IAP's valuable assets on the cheap while making sure no other bidder has a chance to meaningfully bid.

77.    On information and belief, neither of the existing bidders intend to dignify the November 28 Sale by appearing.

78.    If Black Diamond proceeds, it will take the position it owns the property of IAP and it will irreparably harm IAP and its creditors.

79.    IAP should itself seek to enjoin the November 28 Sale, or voluntarily file for bankruptcy protection, but because Black Diamond controls IAP, Black Diamond will never let IAP take such actions.

## COUNT I

████████████████ **– Insider Preference Pursuant to Fla. Stat. 726.106(2)**

*(Black Diamond Commercial Finance, LLC; BDCM Opportunity Fund III, LP; BDCM Opportunity Fund IV, LP; Black Diamond Credit Strategies Master Fund, LTD)*

80.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs.

18

81.     Under Fla. Stat. 726.106(2), a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

82.     At all relevant times, ████████████████████████████████████████ Plaintiff was a judgment creditor of IAP by virtue of the Kuwait Judgment.

83.     

84.     ██████████████████████████████████████████ IAP was insolvent, including lacking reasonable capital to pay the Kuwait Judgment in full.

85.     As its majority shareholder and primary secured creditor, Black Diamond was fully aware of IAP's insolvency or, at minimum, had reasonable cause to believe that IAP was insolvent.   Black Diamond had access to IAP's financial statements and knew or reasonably believed that IAP could not satisfy the Kuwait Judgment in full.

86.     Black Diamond meets the statutory definition of "Insider" under Fla. Stat. 726.102 because Black Diamond was "in control of the debtor" by virtue of its position as majority shareholder of IAP, having appointed a majority of the members of IAP's Board of Directors, and its willingness to ignore the distinctions between Black Diamond Capital, Black Diamond Finance, and the Black Diamond-held Funds.   Under any circumstances, Black Diamond Finance and the Black Diamond-held Funds were and are affiliates of Black Diamond Capital.

87.     Accordingly, all transfers IAP made by virtue ██████████████████████

████████ and may be recovered from Black Diamond Finance and/or the Black Diamond-held

Funds or any other affiliated entity.

## COUNT II

### Fraudulent Private Sale – Actual Fraudulent Transfer Pursuant to 726.105(1)(a)

*(All Defendants)*

88.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding

paragraphs.

89.     Under Fla. Stat. 726.105(1)(a), a transfer made or obligation incurred by a debtor

is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was

made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with

actual intent to hinder, delay, or defraud any creditor of the debtor.

90.     At all relevant times, Plaintiff was a judgment creditor of IAP by virtue of the

Kuwait Judgment.

91.     On October 24, 2023, at the direction of Black Diamond, an insider of IAP, assets

of IAP were transferred to Intrepid, a vehicle of Black Diamond, in the Private Sale.

92.     IAP transferred these assets at the direction of Black Diamond with actual intent to

hinder, delay, or defraud Plaintiff.  Black Diamond's intent, as majority shareholder and through

its Board designees, can and should be imputed to IAP.

93.     At the time of the sale, both Black Diamond Capital and Black Diamond Finance

were insiders of IAP, as IAP's majority secured creditor, a substantial shareholder, and

administrative agent.

94.     Among the badges of fraud identified by Fla. Stat. 726.105(2), the following apply

here, among others:

A. The transfer was made for the benefit of Black Diamond, an insider of IAP. Black Diamond was an insider because it controlled IAP, using its leverage as majority owner, secured creditor, and administrative agent to get its preferred sale and prevent arm's length transactions with IAP;

B. The transfer was made in an Article 9 private and concealed sale, which Plaintiff and other bidders were prohibited from attending and/or had the rules of bidding changed on them by Black Diamond;

C. Before the transfer was made, ███████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ Additionally, Plaintiff advised Black Diamond in a letter that if it proceeded with the Private Sale, Plaintiff would "hold Black Diamond and those who aided and abetted it responsible."

D. IAP faced imminent recognition of the Kuwait Judgment, which would have allowed Al Ghanem to immediately seek to enforce against IAP's assets located in the State of Florida;

E. The value of the consideration received by IAP was substantially below the market value of the assets, as evidenced by the much higher bids IAP received in a going concern sale; and

F. IAP has been insolvent since at least ████ prior to the Private Sale.

## COUNT III

### Fraudulent Private Sale – Constructive Fraudulent Transfer Pursuant to Fla. Stat. 726.105(1)(b)

*(All Defendants)*

95.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs.

96.     Under Florida Law, "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation … (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." Fla. Stat. 726.105(1)(b).

97.     At all relevant times, Plaintiff was a judgment creditor of IAP by virtue of the Kuwait Judgment. Plaintiff's claim arose in 2017, before the transfer was made.

98.     On information and belief, IAP did not receive a reasonably equivalent value in exchange for its assets. IAP received only approximately ███████ in consideration for its assets, a mere fraction of their value and the other offers.

99.     Additionally, the Private Sale was not conducted in a commercially reasonable manner because it was not widely marketed, the highest bid was rejected in favor of a lesser bid, and the sale was made to an affiliate of or an entity controlled by Black Diamond, an insider conducting the sale. The Private Sale in no way maximized value of IAP's assets but instead interfered with the maximization of value.

100.     Further, IAP transferred its assets at a time when it (i) was insolvent, (ii) was engaged in a business or transaction for which its remaining property was unreasonably small capital, and (iii) intended to incur debts beyond its ability to repay as they matured.

101.     The Private Sale should be avoided and recovered from transferee, Intrepid, or any other Black Diamond entity or affiliate that acquired IAP assets.

**COUNT IV**

**Injunction of the November 28 Sale**

*(All Defendants)*

102.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs.

103.     To prevail on a preliminary injunction under New York law, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm if an injunction is not entered; (3) a balance of hardships that tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

104.     *First*, Plaintiff is likely to succeed on the merits of its claim that IAP, at the direction of Black Diamond, intends to make an actual and constructive fraudulent transfer of its assets in the November 28 Sale.

105.     Under Florida law, an actually fraudulent transfer as to a creditor exists where it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. 726.105(1)(a).

106.     Plaintiff is a judgment creditor of IAP by virtue of the Kuwait Judgment. Plaintiff's claim arose in 2017.

107.   On November 28, 2023, at the direction of Black Diamond (an insider of IAP) assets of IAP will be transferred to the benefit of Black Diamond, through an entity affiliated or controlled by Black Diamond, or that will ultimately transfer those assets to Black Diamond.

108.   IAP will transfer these assets at the direction of Black Diamond with actual intent to hinder, delay, or defraud Plaintiff.  Black Diamond's intent, as majority shareholder and through its Board designees, can and should be imputed to IAP.

109.   Among the badges of fraud identified by Fla. Stat. 726.105(2), the following apply to the November 28 Sale, among others:

A.   The transfer will be made for the benefit of Black Diamond, an insider to IAP. Black Diamond is an insider because it controls IAP, using its leverage as majority owner, secured creditor, and administrative agent to get its preferred sale and prevent arm's length transactions with IAP;

B.   The transfer will be of substantially all of IAP's assets;

C.   Prior to the November 28 Sale, ███████████████████████████ ████████████████████████████████████████████ ██████████████████████ Additionally, Plaintiff advised Black Diamond in a letter that if it proceeded with the Private Sale (or with any other future fraudulent transfer of IAP's assets, such as the November 28 Sale), Plaintiff would "hold Black Diamond and those who aided and abetted it responsible."

D.   IAP faces imminent recognition of the Kuwait Judgment, which will allow Al Ghanem to immediately seek to enforce against IAP's assets located in the State of Florida;

E.  The value of the consideration that IAP will receive will be substantially below the market value of the assets given that, on information and belief, the only bidder that will participate in the November 28 Sale is Black Diamond, which will allow it to acquire the assets at a fraction of the much higher bids IAP received in a going concern sale; and

F.  IAP has been insolvent since at least █████

110.   Under Florida law, a constructive fraudulent transfer exists when it is made "without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."  Fla. Stat. 726.105(1)(b)

111.   On information and belief, IAP will not receive a reasonably equivalent value in exchange for its assets.  Neither of the interested bidders will participate in the November 28 Sale, which will allow Black Diamond (the only expected bidder) to acquire the assets at subpar value.  This is further evidenced from Black Diamond's pattern of misconduct as exemplified in the Private Sale, where it acquired certain IAP assets for approximately █████████ a mere fraction of their value and the other offers.

112.   Additionally, the November 28 Sale will not be conducted in a commercially reasonable manner because it has not been widely marketed, and Black Diamond gave a public notice on the Friday before Thanksgiving, providing potential bidders with only four business days to engage in due diligence, sign non-disclosure agreements, and present a bid.  Moreover, on information and belief, Black Diamond (through any of its affiliated or proxy entities) will be the

only bidder, so the transfer will be made to an insider.  The November 28 Sale in no way will maximize value of IAP's assets but instead will interfere with the maximization of value.

113.   Further, IAP will transfer its assets at a time when it (i) is insolvent, (ii) will engage in a business or transaction for which its remaining property was unreasonably small capital, and (iii) intends to incur debts beyond its ability to repay as they matured.

114.   *Second*, Plaintiff stands to suffer imminent and irreparable harm from the November 28 Sale.  Without court intervention, the sale will take place imminently, in a mere eight days.  The November 28 Sale will deplete IAP of its assets and place them outside of the reach of its creditors, leaving Plaintiff unable to recover the Kuwait Judgment.

115.   *Third*, the balance of hardships tips in Plaintiff's favor.  Plaintiff stands to suffer irreparable harm if the November 28 Sale takes place.  In contrast, maintaining the status quo will not harm Black Diamond and IAP in any way.  Instead, it would actually benefit IAP and its creditors, as it would either prompt IAP to restart the consensual sale process and sell the business as a going concern, or force the company to start a restructuring process that will provide relief to all of its stakeholders.

116.   *Fourth*, the injunction is in the public interest as it will prevent illegal and fraudulent acts from taking place and will allow for compliance with pre-existing agreements and final judgments.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for relief and judgment as follows:

A.   On the First Claim for Relief, avoidance of transfers ███████████████████ as insider preferences under Fla. Stat. 726.106(2) to the extent necessary to satisfy the Plaintiff's claims and for other relief permitted under Fla. Stat. 726.108;

B.   On the Second and Third Claims for Relief, avoidance of the transfers made in the Private Sale as actual and constructive fraudulent transfers under 726.105(1)(a) and Fla. Stat. 726.105(1)(b) to the extent necessary to satisfy the Plaintiffs' claims and for other relief permitted under Fla. Stat. 726.108;

C.   On the Fourth Claim for Relief, injunctive relief enjoining the November 28, 2023 Sale;

D.   Attorney's fees and costs in relation to the instant proceeding; and

E.   Any other monetary, injunctive, or other relief that, in the interests of justice, the Court deems necessary and proper.

## JURY TRIAL DEMAND

Plaintiff Adel Y. Al Ghanem hereby demands a trial by jury of any and all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:    November 20, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Dennis H. Hranitzky*

Dennis H. Hranitzky
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, UT 84121
Tel: 801-515-7300
Fax: 801-515-7400
dennishranitzky@quinnemanuel.com

Debra D. O'Gorman
Yehuda Goor
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100
debraogorman@quinnemanuel.com
yehudagoor@@quinnemanuel.com

Eric D. Winston (*pro hac vice* pending)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100
ericwinston@quinnemanuel.com

*Attorneys for Plaintiff*